John H. HELD, Plaintiff–Appellant,

v.

**MANUFACTURERS HANOVER
LEASING CORPORATION,**
Defendant–Appellee.

No. 89–1206.

United States Court of Appeals,
Tenth Circuit.

Aug. 16, 1990.

Marjorie N. Sloan (John N. McNamara, Jr., with her on the briefs) of Baker & Hostetler, Denver, Colo., for plaintiff-appellant.

J. Scott Dyer of Simpson Thacher & Bartlett, New York City (Tonianne Florentino of Simpson Thacher & Bartlett, New York City, Henry C. Cleveland, III and David E. Bellack of Saunders, Snyder, Ross & Dickson, P.C., Denver, Colo., with him on the brief), for defendant-appellee.

Before MOORE, BRORBY and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

Appellant John H. Held appeals the grant of summary judgment by the United States District Court for the District of Colorado to appellant's former employer, Manufacturers Hanover Leasing Corporation (MHLC). Appellant's complaint alleges that MHLC discharged him after almost ten years of employment, in part to prevent him from attaining vested rights under MHLC's retirement plan in violation of § 510 of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. The complaint seeks legal and equitable relief. The district court granted MHLC's summary judgment motion on the ground that the limitation period applicable to appellant's claim had expired. We review the grant of summary judgment under the same standards applied by the district court, *Osgood v. State Farm Mutual Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988), and affirm in part, reverse in part and remand.

## FACTS

The salient facts are not in dispute. Mr. Held commenced employment with MHLC on February 3, 1975, and resigned on July 13, 1984, although his salary was continued until October 9 of that year. At all times Mr. Held performed his services for the corporation outside of the United States,

first in Puerto Rico, and then in Brazil, Mexico, Korea, Indonesia, and Hong Kong. Shortly after arriving in Hong Kong, Mr. Held was informed by his supervisor that he would not be reassigned to another position. He tendered his resignation at that time. His discharge took effect in November 1984, one month before the vesting date for his pension benefits.

Mr. Held graduated from the University of Colorado School of Law in 1972 and claims to be a Colorado native. After leaving MHLC's employ, Mr. Held returned to Colorado, which he claims he had maintained as his domicile throughout his employment with MHLC. Appellant currently resides in Colorado.

Mr. Held filed his first complaint on July 25, 1988, just over four years after he resigned. His first complaint erroneously named Manufacturers Hanover Corporation as the defendant, and that complaint was amended to name MHLC on December 5, 1988. Mr. Held claimed that he was a participant in MHLC's pension plan, which qualifies as an "employee benefit plan" as defined in ERISA, 29 U.S.C. § 1002(2)(A). He further claimed that MHLC coerced him to resign from his position shortly before completion of the ten years of service required for a nonforfeitable vested right in accrued benefits in that plan. Mr. Held's complaint seeks an order enforcing his rights as a participant in the pension plan, a recovery of benefits due him under the plan, damages, and attorney fees and costs.

Mr. Held's claim arises in part under § 510 of ERISA, 29 U.S.C. § 1140, which states: "It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." In addition, § 502 of ERISA, 29 U.S.C. § 1132 (the terms of which are applicable to enforcement of a claim under § 510, 29 U.S.C. § 1140), forms the basis of appellant's claim for benefits due him under the pension plan. *See* § 1132(a)(1)(B).

MHLC moved for summary judgment, asking the court to dismiss the action on the grounds that Mr. Held's claims were barred by the New York or Colorado statute of limitation concerning employment discrimination. The district court granted the motion on the grounds that New York law applied and that the three-year New York statute of limitation applicable to claims of employment discrimination barred the action.

ERISA does not expressly provide a limitation period for actions (including § 510 actions) brought under § 502. Because MHLC's headquarters and principal place of business are in New York, the district court determined that New York has the most significant relationship to the claim and thus that New York law applies. The district court further determined that the most analogous claim for relief under New York law is a claim for employment discrimination, which is barred after three years. District Court Order at 1 (citing N.Y.Civ.Prac.L. & R. § 214(2) (McKinney Supp.1989)). The court held that "Colorado has no interest in the subject matter of this litigation," and that the "place of business of the employer is the dominant factor." *Id.* The district judge concluded that plaintiff's claim was barred by New York law as of July 13, 1987.

## ANALYSIS

MHLC contends that, because § 510 of ERISA does not provide a limitation period for claims arising thereunder, an analogous state statute of limitation must be applied. Appellee's Brief at 5 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67 n. 12, 105 S.Ct. 1938, 1942 n. 12, 85 L.Ed.2d 254 (1985); *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)). Mr. Held, on the other hand, poses the principle somewhat differently. He states that "where there is no specifically stated or otherwise relevant federal statute of limitations, the controlling period is the most appropriate one provided by state law." Appellant's Brief at 4 (citing *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 622–23, 102 L.Ed.2d 665 (1989)). This case presents not only a question of the most appropriate statute of limitation, but

also a threshold choice-of-law question, i.e., what state's law should apply. Specifically, the parties dispute whether we should look to Colorado or New York state law for an applicable statute.[1]

ERISA contains two limitation periods, neither of which applies by its express terms to appellant's claims in this case. Section 413, 29 U.S.C. § 1113, is applicable to violations of Part 4 of the Act ("Fiduciary Responsibility"),[2] and § 4301, 29 U.S.C. § 1451, applies to multiemployer plans.[3] Each statute provides two periods—six years and three years—keyed respectively to the date the cause of action arose and the date the plaintiff had actual or constructive knowledge of the cause of action.

29 U.S.C. §§ 1132 and 1140, under which appellant's claims arise, are codified in Part 5 of ERISA, "Administration and Enforcement," not in Part 4, "Fiduciary Responsibility," to which the limitation periods in § 1113 expressly pertain. It may be that MHLC is a fiduciary with respect to the company pension plan; however, there is no evidence in the record on that question. Similarly, there is no evidence that MHLC's pension plan is a multiemployer plan, such that 29 U.S.C. § 1451, which pertains to actions under Subtitle E of ERISA, "Special Provisions for Multiemployer Plans," would necessarily apply.

The Supreme Court has dealt recently and at length with the question of what statute of limitation governs a claim arising under federal law when the federal statute does not provide a specific limitation period. *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). When a federal statute fails to prescribe a limitation period, the "general rule [is] that statutes of limitation are to be borrowed from state law." *Reed*, 109 S.Ct. at 625. However, the Court recognizes a "closely circumscribed exception to the general rule." *Id.* The Court "decline[s] to borrow a state statute of limitations only 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' " *Id.* (quoting *Del-Costello v. Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)).

■ Although this case arguably provides an ideal context for considering whether adoption of an ERISA limitation period makes more sense than searching for an analogous state statute, we believe that inquiry is foreclosed to this panel by this circuit's decision in *Trustees of the Wyoming Laborers Health & Welfare*

---

1. We dismiss as meritless appellant's suggestions that the law of other jurisdictions, e.g., Puerto Rico where he lived when first employed by MHLC, may be applicable.

2. 29 U.S.C. § 1113 provides:
   (a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
   (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
   (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;
   except that in the case of fraud or concealment, such action may be commenced not

later than six years after the date of discovery of such breach or violation.

3. 29 U.S.C. § 1451(a)(1), (f) provides:
   (a)(1) A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan ... may bring an action for appropriate legal or equitable relief, or both.
   . . . .
   (f) An action under this section may not be brought after the later of—
   (1) 6 years after the date on which the cause of action arose, or
   (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action, except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

*Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613 (10th Cir.1988). There we addressed the question what limitation period is applicable to an action under ERISA by trustees of employee benefit pension and insurance funds against an employer for delinquent contributions. The district court and a panel of this court considered several possibly applicable limitation periods from Wyoming state law as well as the limitation period in § 413 of ERISA, 29 U.S.C. § 1113. The district court concluded and we concurred that the "Wyoming ten-year statute of limitations for actions based on written contracts is the statute of limitations 'most analogous' to the Trustees' ERISA action." 850 F.2d at 621.[4]

*Morgen & Oswood*, as the dissent suggests, arguably can be read as not deciding the precise issue presented here; i.e., whether an ERISA statute of limitation should be applied in lieu of an analogous state statute to a claim arising under ERISA § 510. As explained below, however, the majority conclude that the case does answer that question. First, we are persuaded that, in light of the *Morgen & Oswood* panel's discussion of *DelCostello*, it must be assumed that the panel at least implicitly considered whether an ERISA statute of limitation was more analogous to a trustees' action for delinquent contributions than were the arguably analogous state statutes. It follows that in choosing a state statute, the panel must have answered that question in the negative.

Second, the majority disagree with the dissent's contention that the "underlying substantive rights" in this case and in *Morgen & Oswood* are significantly different. In each case the "substantive rights" of concern are those of the employee. The principal purpose of ERISA is to protect employees' rights to benefits under a covered plan. Employers can interfere with those rights in numerous ways, including not making obligatory contributions (as in *Morgen & Oswood*) or discharging an employee before he is fully vested in a plan (as in this case). We see no distinction

---

**4.** We note that the *Morgen & Oswood* panel did not consider the limitation period provided in § 4301(f) of ERISA, 29 U.S.C. § 1451(f), which applies to actions brought for "appropriate legal or equitable relief, or both" by any "plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under [subtitle E, Special Provisions for Multiemployer Plans] with respect to a multiemployer plan." 29 U.S.C. § 1451(a)(1). The plaintiffs in *Morgen & Oswood*—the Trustees—were "various multi-employer trust funds." 850 F.2d at 615. "The Trustees filed this action as 'fiduciaries' to enforce the terms of the trust agreements under [ERISA] ... as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1145." *Id.* (citation omitted). Because the Trustees were, as this court held, "plan fiduciaries" and brought the action in *Morgen & Oswood* for "appropriate legal or equitable relief," i.e., to compel the payment of delinquent contributions to employment benefit pension and insurance funds, the limitation period provided in 29 U.S.C. § 1451(f) arguably should have been applied.

This assessment is reinforced by 29 U.S.C. § 1451(b), which provides that "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." Section 1145 is codified in Part 4, "Fiduciary Responsibility," of Subtitle B, "Regulatory Provisions," to which the enforce-

ment provisions of 29 U.S.C. § 1132 apply, while 29 U.S.C. § 1145, as explained above, is codified in Subtitle E. This language strongly indicates that the time periods for bringing claims for delinquent contributions under § 1145 should not differ from those specified in § 1451 for withdrawal liability (and presumably other) claims. This language further suggests there is no reason to differentiate in the "treatment" of ERISA claims simply on the basis of the organizational structure of ERISA.

Nevertheless, we are not called upon in this case to readdress the precise question posed in *Morgen & Oswood*. Moreover, this panel is not free (outside the *en banc* process) to reconsider this court's conclusion in that case that applying an analogous state statute to an ERISA claim is preferable to applying a limitation period found elsewhere in ERISA. *Cf. Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 297–98 (9th Cir.1987) (following circuit precedent *Trustees for Alaska Laborers–Construction Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir.1987), which held that state statutes of limitation governing contract actions are to be borrowed in ERISA collection actions, although strongly implying that adoption of "a uniform federal rule governing the limitation of actions for collection of delinquent ERISA contributions" would be preferable). Bound by the precedent in *Morgen & Oswood*, we proceed to consider what state statute(s) of limitations is (are) most analogous to appellant's ERISA claims.

between the substantive rights implicated in these two cases that is relevant to the task of determining the appropriate limitation period for the claims brought by Mr. Held. Thus, we consider ourselves bound by *Morgen & Oswood* to apply an analogous state statute, in preference to an ERISA statute of limitation, to these ERISA claims for which Congress has not prescribed an express limitation period.

With respect to the threshold choice-of-law issue, Mr. Held contends that the district court erred in relying solely on § 6(2) of the Restatement (Second) of Conflict of Law (2d ed. 1980) [5] in choosing New York's statute of limitation. He asserts that instead the district court should have applied an analogous statute of limitation of the forum state, Colorado. Indeed, the Second and Fifth Circuits follow this bright-line rule. *See Vigman v. Community Nat'l Bank & Trust Co.,* 635 F.2d 455, 459 (5th Cir.1981); *Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977). Mr. Held argues in the alternative that we should follow the Third and Sixth Circuits, which in cases such as this apply the bright-line rule unless application of the forum state's statute of limitation would frustrate the federal policy in question or work a severe hardship on the litigants. *See Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328, 333–34 (6th Cir.1985); *Consolidated Express, Inc. v. New York Shipping Ass'n, Inc.,* 602 F.2d 494, 507–08 (3d Cir.1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980). Mr. Held also suggests a third approach, that we follow the Ninth Circuit and "borrow the limitation period set by the state most connected with the federal claim." *Chung v. Pomona Valley Community Hosp.,* 667 F.2d 788, 791 (9th Cir. 1982). According to Mr. Held, each of these approaches is preferable to the dis-

trict court's reliance solely on § 6(2) of the Restatement because they avoid an unnecessary excursion into the choice-of-law quagmire on an issue that this circuit has deemed procedural. *See Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141, 142 (10th Cir.1985). Mr. Held finally contends that following any of these approaches would result in our applying Colorado's statute of limitation in this case instead of New York's.

██ We do not address Mr. Held's final contention because we decline to adopt any of the approaches that Mr. Held suggests. We agree with the district court that § 6(2) lends some guidance in choosing the appropriate statute of limitation, but we reject the district court's exclusive reliance on that section. Instead, we adopt § 142 of the Restatement as the means of determining which state's statute of limitation applies when a federal statute that is the basis of a claim does not specify the appropriate limitation period. Section 142 provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
> (a) maintenance of the claim would serve no substantial interest of the forum; and
>
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

---

**5.** Section 6(2) states in pertinent part that the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws (Supp.1988).

We prefer § 142 to the bright-line rule because simply applying the statute of limitation of the forum state would encourage forum shopping. Our adoption of the Restatement position, moreover, does not conflict with the exception to the bright-line test recognized by the Third and Sixth Circuits because we remain bound by *Reed* not to borrow a state's statute of limitation " 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' " *Reed*, 109 S.Ct. at 625 (quoting *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294). Finally, we find the Ninth Circuit's approach, which creates no presumption in favor of the application of the forum state's statute of limitations, inappropriate in this circuit where the statute of limitation is characterized as procedural for purposes of conflicts-of-law analysis. *See Petersen*, 770 F.2d at 142.

■ Applying § 142(2) to Mr. Held's claim, we agree with the district court that "New York has the most significant relationship to the claim in this case." MHLC at all times during Mr. Held's employment maintained its headquarters and principal place of business in New York, the decision not to continue Mr. Held's employment was made there, and Mr. Held's personnel records were maintained there. In contrast, Colorado has no interest in this matter other than that of forum to the litigation and an arguable, but tenuous, concern as Mr. Held's alleged domicile. Clearly, New York has "a more significant relationship" to one of the parties, MHLC, and to the "occurrence," the effective discharge of Mr. Held, than does Colorado. Argu-ably, New York's relationship to Mr. Held may also be more significant than was Colorado's during the period relevant to the action. Moreover, in our view, Colorado has "no substantial interest in Mr. Held's claim." Thus, we must next determine whether the applicable New York statute of limitation bars Mr. Held's claim under ERISA § 510.

■ Before proceeding with a consideration of the most analogous state statute, however, we must address a preliminary matter concerning the characterization of appellant's claims. The district court apparently assumed that plaintiff had a single cause of action that accrued on the date appellant tendered his letter of resignation, i.e., July 13, 1984. *See* District Court's Order at 1.[6] We are of the conviction, however, that appellant has two distinct causes of action. If discharging him was "unlawful" under § 1140, plaintiff was entitled to bring (and did bring) an action for declaratory and injunctive relief under 29 U.S.C. § 1132, which authorizes a civil action "to enjoin any act or practice which violates any provision of [subchapter I of ERISA]" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [subchapter I of ERISA]." 29 U.S.C. § 1132(a)(3). Such an action is clearly one for equitable relief. But appellant is also entitled under 29 U.S.C. § 1132 to bring (and again, did bring) a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B).[7] Thus appellant has two distinct causes of action and claims for relief under ERISA.

Admittedly, the parties' briefs emphasize Mr. Held's § 510 claim and give short

---

6. The district court stated: "Mr. Held submitted a letter of resignation on July 13, 1984.... It is clear that the most analogous claim for relief under New York law ... is barred after three years.... Clearly the plaintiff's claim is barred under New York law and was on July 13, 1987." District Court's Order at 1.

7. Although appellant alleges he "would have [had] a non-forfeitable right to 100% of accrued [pension] benefits contributed by [MHLC] upon completion of ten years of service with [MHLC]," Amended Complaint at ¶ 6, the parties have not argued whether Mr. Held has a colorable claim to something less than "100% of accrued benefits" based on his employment of more than nine years with MHLC.

shrift to the issue of Mr. Held's separate claim for benefits due under the plan. However, plaintiff clearly claimed such benefits in his complaint. Nowhere in his briefs or at oral argument did appellant concede that as a result of his premature discharge he lost his rights to *all* benefits under the company pension plan. The dissent mischaracterizes appellant's position in this regard. *See* Dissent at note 1. Rather, appellant stated in his complaint only that if his employment had continued he would have earned "a non-forfeitable right to 100% of accrued benefits." Thus, this case presents an example of the situation referred to in Fed.R.Civ.P. 56(d), i.e., a "judgment ... not rendered upon the whole case *or for all the relief asked.*" Clearly, the district court's order did not resolve all of Mr. Held's claims for relief. Nor has defendant borne its burden of proving that there are no issues of material fact *with respect to this claim* and that it is entitled as a matter of law to judgment *on this claim.*

Having concluded that appellant has two causes of action under the Act, we must next determine when each cause of action accrued before we can determine whether either or both claims are time-barred.

Determining when a particular cause of action accrues requires answering certain preliminary questions, in particular whether administrative remedies have been exhausted. Neither this circuit nor the Supreme Court has directly addressed the question whether ERISA contains an implicit exhaustion of remedies requirement.[8] But several circuits have distinguished between actions brought to enforce a statutory right under ERISA (for example, claims for injunctive relief arising under § 510) and actions brought to recover benefits under a plan, with respect to the question whether exhaustion of administrative remedies is required prior to seeking judicial relief.

The Eleventh Circuit in *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986), and the Seventh Circuit in *Kross v. Western Elec. Co.,* 701 F.2d 1238 (1983), have held that beneficiaries of an ERISA plan must exhaust internal plan remedies before suing plan fiduciaries on the basis of alleged violations of duties imposed by the statute.

In contrast, the Ninth Circuit in *Amaro v. Continental Can Co.,* 724 F.2d 747 (1984), has held that a plaintiff alleging a statutory violation as opposed to a mere denial of benefits under an ERISA plan need not exhaust internal remedies. *Amaro* rejected the defendant company's claim that a § 510 ERISA claim is essentially "a contractual claim for a breach of an implied covenant of good faith." 724 F.2d at 749. The court also rejected the argument that a § 510 claim is one for "benefits under a collective-bargaining agreement." *Id.* Instead, the court held a § 510 "ERISA action is to enforce statutory rights designed to protect the employees from actions which interfere with their attainment of eligibility for [certain] benefits." *Id.* The court was "persuaded that in enacting section 510, Congress created a statutory right independent of any collectively bargained rights." *Id.* (citing *Kross,* 701 F.2d at 1242–43). The court further concluded that a participant in an employee benefit plan "is not required to exhaust grievance or arbitration procedures prior to bringing an action under Section 510 of ERISA." *Id.* at 752.

Similarly, in *Zipf v. A.T. & T.,* 799 F.2d 889 (3d Cir.1986), the Third Circuit held that a plaintiff is "not required first to exhaust her benefit plan's internal procedures before bringing her claim [under ERISA § 510] that her employer fired her to prevent her from obtaining disability benefits." *Id.* at 894. The court reasoned that a "Section 510 claim asserts a statu-

---

8. The Supreme Court recently denied a petition for writ of certiorari in the case of *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985), which posed this question. 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). Justices White and Brennan dissented in the denial of certiorari, arguing that "the conflict among the circuits over the issue of an exhaustion requirement under ERISA can hardly be passed over as an unimportant one unworthy of this Court's attention." 474 U.S. at 1087–88, 106 S.Ct. at 864.

tory right which plan fiduciaries have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent." *Id.* at 893. The court acknowledged, however, that cases might arise in which a § 510 claim is "so closely intertwined with a serious issue requiring interpretation of a benefit plan that a trial court could properly stay the statutory action pending resolution of the issue by the plan fiduciaries." *Id.* at 894 n. 6.

■ We agree with the Ninth and Third Circuits that a plaintiff need not exhaust administrative remedies prior to bringing an action under § 510 of ERISA. Here, appellant has clearly raised a claim under that statute, alleging in his complaint that a "purpose of the defendant in coercing the plaintiff's resignation was to prevent the plaintiff from receiving retirement benefits under the defendant's pension plan." Requiring appellant to press this claim with MHLC prior to bringing a legal action would serve little purpose. We conclude appellant's cause of action under § 510 arose (and the limitations clock began running) when MHLC allegedly "discharge[d] ... [appellant] ... for the purpose of interfering with the attainment of any right to which [appellant] may become entitled under the plan." 29 U.S.C. § 1140.

■ Limiting the district court's ruling to *only* appellant's § 510 claim for injunctive relief, we agree that the "most analogous claim for relief under New York law is a claim for employment discrimination which is barred after three years under N.Y. C.P.R. § 214(2)." District Court's Order at 1; *see also Murphy v. American Home Products Corp.,* 461 N.Y.S.2d 232, 448 N.E.2d 86, 58 N.Y.2d 293 (1983) (holding that the limitation period for commencing a judicial action for unlawful discrimination in employment is the three-year period of N.Y.Civ.Prac.L. & R. § 214(2)).[9] Thus, we agree with the district court that appellant's cause of action under § 510

arose when Mr. Held was constructively discharged on July 13, 1984, and was barred after July 14, 1987. We have already concluded that New York has a more significant relationship to the parties and the occurrence than Colorado, the forum state, and that maintenance of this claim would serve no substantial interest of the forum state.

We have also concluded that Mr. Held's claim under ERISA § 510 would be time-barred under New York law. Restatement § 142(2), therefore, requires us to apply New York's statute of limitation to this claim. Accordingly, summary judgment for MHLC with respect to this claim was proper.

We turn next to consider appellant's claim for benefits due him under the MHLC pension plan. Whether this claim is also time-barred depends on when the claim accrued and what statute of limitation is applicable. The accrual of a claim for benefits under the plan does not necessarily coincide with the timing of the employer's alleged violation of § 510, nor does the same New York statute necessarily govern both of appellant's claims.

"Uniformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied." *Dameron v. Sinai Hospital,* 595 F.Supp. 1404, 1413 (D.Md.1984) (citing *Jenkins v. Local 705,* 713 F.2d 247, 254 (7th Cir.1983); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir. 1978); *Oates v. Teamster Affiliates Pension Plan,* 482 F.Supp. 481, 484 n. 7 (D.D. C.1979)). *See also Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.) ("ERISA cause of action accrues, and the ... limitations period begins to run, when there has been 'a repudiation by the fiduciary which is *clear* and made known to the

---

**9.** N.Y.Civ.Prac.L. & R. § 214(2) provides in relevant part: "The following actions must be commenced within three years: ... (2) An action to recover upon a liability, penalty or forfeiture created or imposed by statute...."

beneficiar[y]' ") (citations omitted; emphasis in original), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Therefore, exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief. If the rule were otherwise, lawsuits likely would be—and should be—dismissed for lack of ripeness. *See Paris,* 637 F.2d at 361.

■ The record on appeal contains a letter from Mr. Held to Mr. Martin H. Zuckerman, E.V.P., Personnel Department, Manufacturers Hanover Corporation, dated November 20, 1986, in which Mr. Held stated: "Before initiating legal action, I would like to request a lump sum settlement of my retirement benefits from [MHLC]." Mr. Held's letter specified a pension amount he alleged he was entitled to and requested a written reply. We have found nothing in the record that indicates whether or when MHLC responded to this application for benefits. However, MHLC makes a cryptic reference to this letter in its Answer. ("[MHLC] [d]enies the allegations contained in paragraph 8 of the Amended Complaint [i.e., that "plaintiff has written to the defendant requesting benefits owed to him under the plan" and that defendant "denied the plaintiff's request"], and refers to plaintiff's letter to Martin H. Zuckerman, dated November 20, 1986, for its contents.") Thus, MHLC does not deny the existence of Mr. Held's letter, but apparently disputes its significance.

Moreover, in its Answer MHLC also denies Held's allegation that he had "met all conditions precedent to filing this action," and asserts as an affirmative defense that Held had "failed to invoke or exhaust the Plan's administrative remedies prior to the commencement of this action." These questions—whether and when the company denied Mr. Held's application for benefits and whether Mr. Held has exhausted his remedies pursuant to the plan—present a genuine issue of material fact, resolution of which is crucial to the determination of when (or even whether) Mr. Held's cause of action for a recovery of benefits arose. Because the record does not enable us to

answer these questions, we hold summary judgment for MHLC on appellant's claim for benefits is inappropriate at this time.

■ The purely legal issue of what statute of limitation is applicable to appellant's claim for benefits is nevertheless fairly raised by this appeal. We may forestall an additional excursion before this court if we address the question at this time. First, we note that the legislative history suggests Congress intended "actions brought under ERISA to be interpreted by the courts 'in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.'" H.R.Conf. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 5038, 5107, *quoted in Morgen & Oswood,* 850 F.2d at 621. "Actions under section 301 of the [LMRA] have typically been analogized to actions for breach of contract." 850 F.2d at 621; *cf. Robbins v. Iowa Road Builders Co.,* 828 F.2d 1348, 1353–54 (8th Cir.1987) (adopting statute of limitation applicable to actions on a contract in preference to statute applicable to wage payment collection actions, and citing cases holding similarly), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 933 (1988); Annotation, *Limitations of Actions Applicable to Action by Trustees of Employee Benefit Plan to Enforce Delinquent Employer Contributions Under ERISA (29 USCS 1132(1)),* 90 A.L.R.Fed. 374, 378 (ERISA claims commonly treated as non-"hybrid" § 301 LMRA claims, and state contract action limitation applied). *But see Teamsters Pension Trust Fund v. John Tinney Delivery Serv., Inc.,* 732 F.2d 319, 322–23 (3d Cir.1984) (applying statute of limitation in Pennsylvania's wage payment and collection law). In *Morgen & Oswood* this circuit held an action by pension fund trustees against an employer for delinquent contributions analogous to an action on a written contract. 850 F.2d at 620–21.

The New York statute of limitation applicable to actions on a contract has been applied to an ERISA action for benefits. In *Miles,* 698 F.2d at 595, 598, four employees and one former employee of Continen-

tal Can Co. sought a determination of their eligibility for pension benefits, and the former employee requested the court to order the company to pay him a pension benefit. The Second Circuit held that N.Y.Civ. Prac.L. & R. § 213 is the "controlling limitations period." Subparagraph (2) of this statute provides that an "action upon a contractual obligation or liability express or implied" must be commenced within six years. *Id.* § 213(2). Although neither *Miles* nor *Valle v. Joint Plumbing Industry Bd.*, 623 F.2d 196, 202 n. 10 (2d Cir. 1980), which *Miles* cites, provides any explanation of this choice of a statute of limitation, their holdings are consistent with the observation above—that cases typically hold that an ERISA action for benefits is analogous to a state-law action upon a contract. We conclude that the six-year limitation period in N.Y.Civ.Prac.L. & R. § 213(2) applies to appellant's action for recovery of pension benefits and for damages.

Accordingly, the district court's decision is AFFIRMED with respect to Mr. Held's claim for equitable relief under 29 U.S.C. §§ 1132 and 1140, but is REVERSED with respect to Mr. Held's claim for recovery of benefits under § 1132 and REMANDED for further proceedings consistent with this opinion.

EBEL, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's treatment of all but the following two issues. First, I do not agree that plaintiff has asserted a separate contractual claim for wrongful denial of benefits. In my opinion, plaintiff's sole claim is predicated upon a violation of his rights under section 510 of ERISA (29 U.S.C. § 1140), as enforced through 29 U.S.C. § 1132. Accordingly, I would not reverse and remand for further consideration of a claim under section 502(a)(1)(B).

Admittedly, there are some vague references in the record which, if considered in isolation, could arguably provide some support for the majority's view that plaintiff has filed a separate claim for benefits due him under the terms of the retirement plan. However, after examining the record in its entirety, and particularly upon review of the briefs on appeal, I believe it is clear that plaintiff's request for benefits is linked only to his discriminatory termination claim under section 510 of ERISA.

At the trial level, plaintiff stated in his brief in opposition to defendant's motion for summary judgment that he "filed the present case under section 510 of the Employee Retirement Income Security Act." R. Doc. 5 at 1. In addition, defendant characterized plaintiff's claim as follows: "[p]laintiff's sole claim arises under section 510 of the Employee Retirement Income Security Act." R. Doc. 4 at 1 (Memorandum of Law in Support of Defendant's Motion for Summary Judgment). Nowhere did plaintiff dispute this characterization. Indeed, the district court itself apparently understood the limited nature of plaintiff's claim because the order granting defendant's motion for summary judgment only described plaintiff's claim as one under section 510 for discriminatory constructive discharge.[1]

---

1. The thrust of plaintiff's claim is that his employment was terminated *before* he could qualify for retirement benefits under the plan. He alleges that his employer caused his termination so as to preclude him from ever acquiring any nonforfeitable rights under the plan. Thus, he does not appear to be seeking to enforce a separate contractual claim to "benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), but rather he is suing because his termination allegedly prevented him from ever acquiring such benefits, in violation of section 510 of ERISA.

The majority refers to paragraph 6 of the complaint, in which plaintiff alleged that he would have had "a non-forfeitable right to 100%

of [his] accrued benefits upon completion of ten years of service with the defendant." R.Doc. 1 at 2, ¶ 6. As paragraph 7 of the complaint makes clear, however, plaintiff alleges that it was his discriminatory constructive discharge, in violation of section 510, which prevented him from completing the requisite ten years of service. R.Doc. 1 at 2, ¶ 7. Nevertheless, the majority argues that it is at least possible that plaintiff "has a colorable claim to something less than '100% of accrued benefits' based on his employment of more than nine years with MHLC." Maj. Op. at 1203 n. 7. It is true that on appeal plaintiff has not "concede[d] that as a result of his premature discharge he lost his rights to *all* benefits under the company pension

It is even clearer on appeal that plaintiff is asserting only a claim under section 510 of ERISA and that the only issue raised before us is the appropriate statute of limitations for a section 510 ERISA claim.[2] Appellee's brief on appeal once again characterizes plaintiff's claim as one solely under section 510 of ERISA. *See* Appellee's Br. at 2–3 ("Mr. Held's *sole claim* arises under section 510 of the Employment Retirement Income Security Act...." (emphasis added)). Once again, plaintiff does not dispute this characterization of his claim. Indeed, in his reply brief, plaintiff ratifies this description. *See* Appellant's Reply Br. at 1 ("The parties agree: *(a) that the controlling federal statute, section 510 of ERISA, lacks a statute of limitations provision* ..." (emphasis added)); *see also id.* at 2–3, 11, 13 (making clear that plaintiff is asserting rights only under section 510 of ERISA). Not once in any of the briefs on appeal does plaintiff ever assert a claim under 29 U.S.C. § 1132(a)(1)(B) for benefits under the terms of his plan, nor is that statutory provision ever cited to us. So far as I can tell, it was never cited to the district court either, and it is perfectly clear that neither the district court nor either party thought that the case was being tried for recovery of benefits "due ... under the terms of his plan."[3]

I do not think it is appropriate to expand the plaintiff's claim sua sponte on appeal after briefing and oral argument. Therefore, I respectfully dissent from that portion of this court's opinion reversing and remanding "with respect to Mr. Held's claim for recovery of benefits under § 1132." Maj.Op. at 1207. To the extent that plaintiff's claim under section 1132 is premised upon a violation of section 510 of ERISA, I agree with the majority opinion (and the district court) that it is barred by N.Y.Civ.Prac.L. & R. § 214(2). Because I believe that is the only way in which section 1132 is implicated in this case, I would affirm the district court's June 5, 1989 judgment in its entirety.

Second, I agree with the majority's conclusion that the most analogous statute of limitations in an action under section 510 of ERISA is the state limitations provision applicable to employment discrimination cases. However, unlike the majority, I do not read *Trustees of the Wyoming Laborer's Health & Welfare Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613 (10th Cir.1988), as precluding us from considering whether any of the alternative limitation provisions in ERISA should be applied in lieu of a state statute of limitations. *Morgen & Oswood* involved only the issue

plan." Maj. Op. at 1204 (emphasis in original). However, it is equally true that plaintiff nowhere affirmatively asserts that he has a vested contractual right to any plan benefits, either in his complaint or on appeal. It is plaintiff's duty affirmatively to state his claims and to preserve them on appeal. A claim is not made and preserved merely by failing to expressly deny its existence.

**2.** *See, e.g.,* Appellant's Br. at 12 ("Congress designed section 510 of ERISA to protect the employment relationship that gives rise to an individual's pension rights and its prohibitions were aimed primarily at preventing employers from discharging or harassing their employees in order to keep them from obtaining vested rights."); *id.* at 14 ("[C]ourts faced with the selection of a statute of limitations have variously characterized section 510 cases as contract actions; liability created by statute; and actions of employment discrimination or breach of fiduciary duty.... A section 510 action is brought under the authority of 29 U.S.C. § 1132...." (citations omitted)); *id.* at 16 ("Be-

cause the heart of a section 510 claim is restitution of the employee's retirement income, it is evident that Puerto Rico law provides a five-year limitations period for the plaintiff's claim.").

**3.** The majority suggests that this may be a case where there is a "'judgement ... not rendered upon the whole case or for all the relief asked.'" Maj. Op. at 1204 (quoting Fed.R.Civ.P. 56(d)). Yet, the district court's order dismissed the entire complaint pursuant to defendant's motion for summary judgment. If plaintiff's complaint included a claim for vested contractual benefits, it, of necessity, was also dismissed, and that dismissal was not appealed. Therefore, it would be final. If the complaint did not contain such a claim, I believe that any subsequent attempt to bring such a claim would be barred by the doctrine of res judicata. If, notwithstanding the unqualified dismissal of the entire case, the district court's order was not a resolution of the entire case (as the majority apparently suggests) we would lack jurisdiction to hear this appeal because it would be interlocutory in nature.

of what limitations period should be applied in an action brought under ERISA by trustees of certain multiemployer pension and insurance funds against an employer for delinquent contributions. The substantive provision involved in that case was 29 U.S.C. § 1145, which requires employers to make their agreed contributions to multiemployer plans, and the statute of limitations analysis involved the determination of the cause of action that was most analogous to the substantive obligations under section 1145.

Here, by contrast, we are dealing with an entirely different substantive obligation— one that arises under section 510 of ERISA (29 U.S.C. § 1140). That provision prohibits an employer from firing an employee or otherwise taking action against him in order to interfere with his protected rights under an employee benefit plan. This is quite a different underlying substantive right, and it is analogous to different state and/or federal rights. Accordingly, the result in this case is not dictated by *Morgen & Oswood.*

In any event, the court in *Morgen & Oswood* did not even consider other possible statute of limitations provisions in ERISA that might be analogous except for a brief conclusion that the limitations period contained in 29 U.S.C. § 1113 (which applies to actions brought to redress a fiduciary's breach of its obligations) should not be applied. *Morgen & Oswood,* 850 F.2d at 618 n. 8. Rather, the court briefly directed its attention to the limitations period contained in § 10(b) of the National Labor Relations Act (29 U.S.C. § 160(b)) and then turned its attention to analogous state statutes of limitation. The court acknowledged that it was appropriate to borrow a state statute of limitations only " 'if it is not inconsistent with federal law or policy to do so.' " *Id.* at 618 (quoting *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)). The question we need to resolve, which was not decided by *Morgen & Oswood,* is whether it "frustrate[s] or significantly interfere[s] with federal policies" to borrow a state statute of limitations to bar a claim *under section 510 of ERISA. Reed v. United*

*Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989).

When, as is the case under section 510 of ERISA, there is no federal statute of limitations for a particular substantive right, we have been admonished that "the general rule [is] that statutes of limitation are to be borrowed from state law." *Id.* at 625. The only exception to this general principle is " 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' " *Id.* (quoting *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)).

The limitation provisions contained in other sections of ERISA are not sufficiently analogous to a section 510 claim to justify overriding the general rule that the most analogous state statute of limitations should be incorporated. Indeed, neither party argues here that there is an analogous limitations provision found in other sections of ERISA or elsewhere in federal law that should be adopted instead of a state law provision. I believe that a claim of retaliatory discharge under section 510 is more closely related to a state-law employment discrimination suit than to an action under other sections of ERISA for breach of fiduciary duty, *see* 29 U.S.C. § 1113; for the termination of a single-employer plan, *see* 29 U.S.C. § 1370(f); for an action involving a multiemployer pension plan, *see* 29 U.S.C. § 1451(f); or for an action initiated by, or brought against, the Pension Benefit Guaranty Corporation, *see* 29 U.S.C. §§ 1303(e)(6), (f)(5); 1368(d)(2). Therefore, although I believe that we have to consider the applicability of federal statutes of limitation (particularly those found in ERISA), nothing in *Morgen & Oswood* precludes such an analysis. There are no federal provisions more suitable for application to a claim under section 510, and, as a result, I concur in the majority's conclusion that the three-year statute of limitations period of N.Y.Civ.Prac.L. & R.

§ 214(2) was properly applied to plaintiff's claim under section 510.