Edwin Walter ABBOTT, Plaintiff,

v.

DRS. RIDGIK, STEINBERG & ASSOCIATES, P.A., Frederic Steinberg, and Joseph Ridgik, Defendants.

Civ. A. No. 84–0693.

United States District Court,
D. New Jersey.

May 31, 1985.

Mitnick, Vogelson, Josselson & DePersia, Haddonfield, N.J. by Richard P. Supnick, Haddonfield, N.J., for plaintiff.

Sherman Silverstein & Kohl, P.C., Cherry Hill, N.J. by Mary K. White, Cherry Hill, N.J., for defendants.

## OPINION

COHEN, Senior District Judge:

This labor dispute, arising under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c), is before the Court on defendants' motion for summary judgment based on the statute of limitations. In the underlying action, the plaintiff, Edwin Walter Abbott, seeks an award of up to $100.00 per day for each day that he was denied information regarding the amount of his vested benefits in a pension and profit sharing plan which was administered by his former employer, the defendants herein, Drs. Ridgik, Steinberg & Associates, P.A., *et al.* Due to a settlement agreement which terminated a concurrent and largely duplicative state court action,[1] plaintiff's entitlement to the pension funds is no longer contested. Thus, only plaintiff's entitlement to the aforementioned *per diem* damages remains in dispute. Presently, however, we need only decide what statute of limitations should apply to plaintiff's claim.

Part 5 of the main subchapter of ERISA, which describes the enforcement scheme available to protect employee benefits, does not contain its own statute of limitations. Thus, we must select and apply, as a matter of federal law,[2] the limitations period contained in the most analogous state statute. *Jenkins v. Local 705 Intern. Broth. of Teamsters Conf., etc.,* 713 F.2d 247, 251 (7th Cir.1983) (applying contract statute of limitations to an ERISA

---

**1.** *Abbott v. Ridgik & Steinberg,* No. C 1695–81, Superior Court of New Jersey, Camden County—Chancery Division. There, the parties stipulated that Abbott was due almost $9,000.00 in severance benefits and $57,000.00 under a pension and profit sharing plan. The ERISA claim for the § 1132(c) penalty is within the exclusive jurisdiction of the federal courts and was not, therefore, considered in the state court action which was instituted on January 12, 1982.

**2.** *See International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966).

claim for pension benefits); *Miles v. New York State Teamsters Conf., etc.,* 698 F.2d 593, 598 (2d Cir.1983) (same); *Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980) (same); *Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518, 526 (N.D.Cal.1977) (same). Defendants urge this Court to depart from these cited precedents because, in this case alone, the § 1132(c) *per diem* enforcement provision is at issue. Defendants maintain that the proper state analogue is N.J.S.A. 2A:14–10(b) (West 1952),[3] which is a two year statute of limitations governing civil actions brought upon penal statutes. Because § 1132(c) does not require the imposition of an arbitrarily computed award designed to rectify a public wrong, we disagree. *See Gordon v. Loew's, Inc.,* 247 F.2d 451, 456 (3d Cir.1957). Instead, we shall apply New Jersey's six year statute of limitations governing contract actions to plaintiff's claim. Accordingly, defendants' motion for summary judgment shall be denied with prejudice.

Essentially, the defendants have argued that § 1132(c)[4] is penal in nature. *See Addis v. Logan,* 23 N.J. 142, 128 A.2d 462 (1957) (suit seeking treble damages under New Jersey's Rent Control Act was governed by the two year statute of limitations). *Accord Gordon,* 247 F.2d at 456–57 (quoting *Addis* and holding that a Clayton Act treble damage award, when governed by New Jersey limitations period, must also be regarded as penal).

■ A penal statute is one which imposes punishment for an offense against the state as compared to a wrong against an individual. *E.g., Ryan v. Motor Credit*

*Co.,* 130 N.J.Eq. 531, 23 A.2d 607 (1942). For example, although a treble damages award accrues to the direct benefit of the individual plaintiff, "violations of the antitrust laws also impugn the Congressional purpose of freeing interstate commerce from restraints and monopolies and thus incidentally wrong the public." *Gordon,* 247 F.2d at 456. Here, the plaintiff seeks personal redress pursuant to an enforcement provision that is not even available to the general public. *See* 29 U.S.C. § 1132(a). Nevertheless, it is not difficult to demonstrate that the cumulative impact of almost any type of conduct could negatively affect interstate commerce and, thereby, incidentally harm the public. *See, e.g., Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971). We are, therefore, reluctant to dispose of this matter simply on the basis of an arguably nebulous distinction between a public and private wrong.

Similarly, the fact that the § 1132(c) award has been described as a fine or penalty, *see Bonin v. American Airlines, Inc.,* 562 F.Supp. 896, 898 (N.D.Texas 1983), is not dispositive. Even the *Addis* decision, upon which the defendants rely, noted that a statutory penalty may be "both remedial and penal." 23 N.J. at 148, 128 A.2d 462. Moreover, punitive damage claims, like penal sanctions, are designed to punish and deter wrongdoers yet are not governed by separate and purposefully brief limitations periods. *See* D. Dobbs, Remedies 205 (1973). Finally, the characterization of § 1132(c) as a penalty is informal and unavoidably imprecise[5] and should not, there-

---

**3.** In pertinent part, 2A:14–10 provides:
All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced ...
(b) Within 2 years next after the offense committed or to be committed against the statute, or cause of action accrued, when the benefit of the forfeiture and the action thereof is or shall be limited or given to the party aggrieved.

**4.** 29 U.S.C. § 1132(c) provides:
Any administrator who fails or refuses to comply with a request for any information

which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100.00 a day from the date of such failure or refusal....

**5.** As Judge Maris noted in *Gordon,* "[P]enal and "penalty" are not words of art.... [T]heir meaning varies with the circumstances in which they are used and takes on the meaning in each instance which the user intends." 247 F.2d at 457. Having decried quick fix solutions, we shall not belabor the fact that a pension plan

fore, contribute to our decision. Instead, we must "examine the underlying nature of the federal claim as well as the federal policies involved." *Jenkins*, 713 F.2d at 251.

The nature of the ERISA claim at issue can perhaps best be described as completely discretionary. A pension administrator who refuses to provide financial information within the 30 day time period prescribed by § 1132(c) may not be required to pay *any* penalty. This is not due to a selective enforcement scheme akin to prosecutorial discretion but rather to the requirement that a successful § 1132(c) claimant be able to demonstrate prejudice resulting from an administrator's failure to provide requested information in a timely fashion. *See Shlomchik v. Retirement Plan of Amalgomated Insurance Fund,* 502 F.Supp. 240, 245 (E.D.Pa.1980), *aff'd,* 671 F.2d 496 (3d Cir.1981). *Accord Wesley v. Monsanto Co.,* 554 F.Supp. 93, 98 (E.D. Mo.1982), *aff'd,* 710 F.2d 490 (8th Cir.1983) (per curiam); *Adams v. Western Conference of Teamsters Pension Plan,* 484 F.Supp. 933, 935 (D.Utah 1979). *Compare Porcellini v. Strassheim Printing Co., Inc.,* 578 F.Supp. 605, 615 n. 2 (E.D.Pa. 1983) (to the extent that prejudice is required, a court may consider emotional harm to a plan participant in determining the amount of the award). Similarly, in a contract action, it is axiomatic that a successful plaintiff must prove the existence of a compensable injury in addition to the occurrence of a breach.

The § 1132(c) claimant, who only proves that a plan administrator failed to provide information in a timely fashion may be entitled to underlying retirement benefits but the § 1132(c) award, like an award of punitive damages or an award for the breach of a tort duty accompanying the breach of a contractual duty, entails a distinct analysis of a plaintiff's proofs. *Cf. Faber v. Creswick,* 31 N.J. 234, 242–43, 156 A.2d 252 (1959) (tort recovery accompany-

ing breach of covenant to repair). The *per diem* award does not merely punish; it also compensates for the injury caused by an administrator's delay. Accordingly, the amount of a § 1132(c) award is not simply based upon the amount of a claimant's underlying recovery of retirement benefits. This is, of course, contrary to the nature of *treble* damage awards but similar to punitive damage awards, which also need not bear a proportional relationship to compensatory relief. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224 (1984).

The size of a punitive award need only be properly related to the goals of punishment and deterrence. *Id.* These same goals underlie treble damage statutes. Dobbs, *supra,* at 347. Thus, it seems apparent that it was the mandatory *nature* of the treble damage awards and the correlative need to limit a defendant's exposure to such "arbitrarily computed" recoveries merely upon proof of an underlying offense which led the *Addis* and *Gordon* courts to adopt brief statutes of limitation. *Gordon,* 247 F.2d at 456; *Addis,* 23 N.J. at 148–49, 128 A.2d 462.

The ERISA provision at issue similarly reflects, *inter alia,* the goals of punishment and deterrence. Its form, however, closely resembles a punitive damage award. Its availability must be governed with this in mind. Moreover, the nonpunitive policies which underlie the ERISA provision militate against the adoption of a short statute of limitations.

Section 1132(c) was intended to "compel compliance with the full disclosure principles ... embodied in ERISA." *Porcellini,* 578 F.Supp. at 614. Thus, although monetary, the § 1132(c) award, when viewed as a means of compelling compliance with the larger remedial scheme of ERISA, is easily distinguished from a fine or even an award of compensatory damages, which are ends in themselves. This distinction may be considered when attempting to ascertain the

---

administrator may be *"liable"* for the ERISA award, 29 U.S.C. § 1132(c) (emphasis supplied), while a landlord who violates the Rent Control

Act at issue in *Addis* would be forced to *"forfeit"* treble damages. 23 N.J. at 145, 128 A.2d 462 (quoting N.J.S.A. 2A:42–51) (emphasis supplied).

conditions under which an § 1132(c) award should be available. *Cf. Hutto v. Finney*, 437 U.S. 678, 689–92, 98 S.Ct. 2565, 2572–74, 57 L.Ed.2d 522 (1978) (Eleventh Amendment prohibition of damages does not extend to attorneys' fees which are incidental to prospective relief). When viewed as an enforcement provision incidental to the ERISA remedial scheme, it seems unwise to make § 1132(c) unavailable after only two years.

Although its "collective cogitations on this particular provision of ERISA are scant," *Porcellini*, 587 F.Supp. at 613, Congress seems to have intended to make § 1132(c) available to pension fund claimants as a means of applying pressure on taciturn fund administrators. Cast in this light, § 1132(c) provides the "teeth" of a request for retirement benefits information. We are unwilling to extract these teeth too quickly and leave present or prospective retirees without the compelling apparatus of § 1132(c). The provision merely reinforces an obligation of fund administrators to provide *information;* it cannot be used coercively to reap undeserved benefits.

■ Numerous cases, including *Miles, Jenkins, Livolsi* and *Morgan, supra,* have determined that the statute of limitations governing contract actions, which is significantly longer than the two year penal statute advocated by the defendants herein, should govern complaints which allege ERISA benefit distribution violations. The § 1132(c) remedy should be available on a coextensive basis. There is little logic in permitting a pension plan participant to file suit and seek to compel a benefit distribution at any time during a six year period while limiting his or her access to a related enforcement device to a two year period.

Yet, if we were to grant defendants' motion, we would create this very scenario.[6]

■ If § 1132(c) provided for a mandatory $100.00 per day penalty, then, like the *Addis* court, we would be extremely concerned about such actions "being unlimited." 23 N.J. at 149, 128 A.2d 462. Because § 1132(c) permits the award of any figure, from one cent to one hundred dollars per day, we do not fear that unwarrantable liability will befall dilatory plan administrators. Section 1132(c) explicitly provides that an administrator who fails to furnish information because of "matters reasonably beyond [his or her] control" shall not be "liable" for any penalty. Thus, a court asked to impose a § 1132(c) award must consider the conduct of the plan administrator as well as the claimant's demonstration of prejudice. *See Porcellini*, 598 F.Supp. at 614. A court can, therefore, permissibly balance equities in assessing the need for an § 1132(c) award. There is simply no reason why such an award should be governed by a purposefully brief statute of limitations, N.J.S.A. 2A:14–10.

Because its predecessor is an English statute, 3d Eliz., ch. 5, that was adopted as a part of New Jersey's initial jurisprudence in 1776, an instructive legislative history of N.J.S.A. 2A:14–10 is not available. *See Boswell v. Robinson*, 33 N.J.L. 273, 276 (1869). It is clear, however, that the statute demonstrates "the indisposition of the courts to consider any actions unrestrained and [the need] to prevent a penal action, from being unlimited." *Id.* at 278. The most frequently cited rationale for brief penal statutes of limitation is the need to protect defendants "from losing access to the evidentiary means to defend against the accusation of crime." G. Uelmen, *Making Sense Out of the California Criminal Statute of Limitations*, 15 Pac.L.J. 35, 44

6. Although this issue has not been presented by counsel, it seems clear that the timely filing of plaintiff's benefit distribution action in the state court did not toll the running of the limitations period applicable to his § 1132(c) action in this Court. *Cf. Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). "[A]lthough related [and] directed to most of the same ends," the remedies sought by the plaintiff in the two actions are "separate, distinct, and independent." *Id.* at 461, 95 S.Ct. at 1720. Certainly his complaint demanding severance and profit sharing benefits and his complaint demanding the § 1132(c) award may not be said to assert "exactly the same cause of action." *Id.* at 467, 95 S.Ct. at 1723.

(1983). *See also* Model Penal Code § 1.07 Advisory Committee Commentary (Tent. Draft No. 5); Note, *The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution*, 102 U.Pa.L.Rev. 630, 632–35 (1954). For two reasons, this rationale does not support the defendants' position in this case. First, staleness problems are most acute in cases in which eye witness accounts are crucial to the prosecution. *Uelmen, supra*, at 46. Here, the relevant evidence is all documentary and will not deteriorate rapidly with the passing of time. Second, the stigma and potential loss of liberty which typically attend criminal prosecutions are simply not at issue. The only penalty authorized or implicated by § 1132(c) is monetary and it is only available in the Court's sound discretion.

The plaintiff commenced this action in order to gain the benefits of an agreement executed with his employer. Accordingly, his cause of action shall be governed by New Jersey's six year statute of limitations, 2A:14–1 (West 1952). *Cf. Casey v. Selected Risks Ins. Co.*, 176 N.J.Super. 22, 422 A.2d 83 (App.Div.1980) (suit by an insured to collect the benefits of an insurance policy is governed by the contractual statute of limitations). Abbott filed this complaint on February 21, 1984. Therein, he alleges that his request for pension information was mailed to defendants in November of 1980. Thus, his complaint cannot be time barred and defendants' motion shall be denied with prejudice.

The Court shall enter an appropriate order.