**ADAMS, Glenn, et al., Plaintiffs,**

v.

**CYPRUS AMAX MINERAL COMPANY, a Delaware corporation, and Helen M. Feeney, Defendants.**

**Civil Action No. 96–K–71.**

United States District Court,
D. Colorado.

March 26, 1999.

James Christopher Mallon, James C. Mallon, P.C., Evergreen, CO, John H. Lonquist, John H. Lonquist, P.C., Denver, CO, Peter B. Carey, Michael G. Connelly, Peter B. Casey Law Offices, Chicago, IL, for plaintiffs.

Charles W. Newcom, Sherman & Howard, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Plaintiffs, thirty-nine former employees of Amax Research and Development, Inc., bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Cyprus Amax Minerals Company and plan administrator, Helen M. Feeney. Jurisdiction exists under 28 U.S.C. § 1331 and ERISA 29 U.S.C. § 1132(e)(1). Before me is Defendants' Motion for Summary Judgment, which I grant in part and deny in part.

### I. *Introduction.*

In December 1993, Plaintiffs' employment with Amax Research and Development, Inc. ("Amax R & D"), a wholly owned subsidiary of Amax, Inc. ("Amax"), was terminated following Amax Inc.'s merger into Cyprus Minerals Company

("Cyprus Amax").[1] Plaintiffs claim that, upon termination, they were entitled to benefits under Amax Inc.'s Corporate Separation Policy for Corporate Employees, also referred to as the Enhanced Severance Plan ("ESP").

The ESP is an ERISA "employee welfare benefit plan," 29 U.S.C. § 1002(1),[2] which applies only to "Corporate Employees." (Dep.Ex. 1.) Although the ESP defines "Corporate Employees" as "... personnel of the Company at the Company's corporate headquarters other than Corporate Officers," it does not define the term "corporate headquarters." The central issue in dispute is whether Plaintiffs were "corporate headquarters" personnel entitled to benefits under the ESP. If Plaintiffs were eligible to receive benefits under the ESP, they would have received larger severance payments and greater medical benefits than those received under the severance plan applied to them.

After not receiving full benefits under the ESP, Plaintiffs filed an ERISA suit against Cyprus Amax and plan administrator, Helen M. Feeney. The First Amended Complaint alleges six claims for relief. The first five claims are against Cyprus Amax, alleging breach of fiduciary duty, violation of ERISA procedures, and violation of the plan itself pursuant to 29 U.S.C. § 1132(a)(1)(B).[3] Plaintiffs seek monetary benefits and enforcement of their rights under the terms of the ESP. The sixth claim prays for civil penalties against Feeney pursuant to 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c).[4] According to Defendants, Plaintiffs have received full severance benefits under the plans applicable to them as

1. After the merger with Amax Inc., Cyprus Minerals Company changed its name to Cyprus Amax Minerals Company.

2. ERISA is a comprehensive remedial statute designed to protect working men and women and to cure widespread weaknesses in the private pension system. To strengthen the pension system, ERISA established minimum vesting, funding, fiduciary and disclosure requirements which every pension plan must meet. It also delineated a specific uniform standard of conduct for fiduciaries. *See generally* H.R.Rep. No. 533, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad. News 4639. ERISA applies to any "employee benefit plan" if it is established or maintained by any employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). An "employee welfare benefit plan" is broadly defined to include:

"[A]ny plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ... or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)". 29 U.S.C. § 1002(1). Section 186(c), cited in subsection (B) above, specifically lists "severance benefits." The effect of citing to section 186(c) is "to include within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar...." 29 C.F.R. § 2510.3–1(a)(3). Thus, the severance plan known as the ESP in this case is an employee welfare benefit plan to which ERISA applies.

3. Section 1132(a)(1)(B) empowers a participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

4. Section 1132(a)(1)(A) empowers a participant or beneficiary to file a civil action "for the relief provided for in subsection (c) of this section." Subsection (c) pertinently provides: "Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B).

employees of Amax R & D. They deny Plaintiffs are entitled to any severance benefits under the ESP or were ever eligible for the benefits which they seek and raise a number of affirmative defenses.

Defendants seek summary judgment on the grounds that (1) Plaintiffs, as Amax R & D personnel, were not "personnel of the company at the company's headquarters" and therefore are not entitled to benefits under the ESP; (2) no claims procedure violations have occurred, nor would any procedural violation entitle plaintiffs to receive benefits under the ESP; (3) Cyprus Amax did not owe Plaintiffs any fiduciary duty and, alternatively, did not breach any fiduciary duty; and (4) the sixth claim for relief is barred by the Colorado Statute of Limitations and, in any event, fails to state a claim.

## II. *Background Facts.*

Plaintiffs are all former employees of Amax R & D at all relevant times, a wholly owned subsidiary of Amax. Amax R & D provided research and development services to Amax divisions and businesses and for non-Amax entities in matters of interest to Amax divisions and Amax R & D. Helen Feeney was the Corporate Secretary of Amax and the Plan Administrator of the ESP. Citing Feeney's deposition testimony, Defendants assert Amax had its corporate headquarters in New York City, New York. (February 11, 1997 Feeney Dep. ("Feeney Dep. I") at 129:23–25; 131:9–22; 132:2–12; and 139:1–11 and 117:3–10.) Plaintiffs, on the other hand, also cite Feeney's deposition testimony for the proposition that Amax had multiple corporate headquarters because that term was defined as applied by Amax in both a geographic and functional sense. (Feeney Dep. I at 130:20–132:12.)

On March 24, 1993, Amax agreed to merge with Cyprus Minerals Company to form Cyprus Amax. Following the merger, most of Plaintiffs were terminated on December 31, 1993. Plaintiff Sue Germann remained employed by Amax R & D until November 1994. Plaintiffs were paid severance under the severance pay policy distributed to them in March 1993. In addition, they were paid the bonus benefit of, or one equivalent to that under, the ESP. (Bhasin Dep. at 78:6–20, 104:25–105:12; Germann Dep. at 57:20–58:12; Germann Aff. at ¶ 11–13.)

In 1991, Amax adopted the ESP. Benefits under the ESP were available only to "Corporate Employees," defined in the ESP as "all full-time regular salaried exempt and non-exempt personnel of the Company at the Company's corporate headquarters other than Corporate Officers." (Dep. Ex. 1 at 5.) On June 7, 1993, Feeney, through her secretary, distributed a memorandum addressed "TO ALL CORPORATE EMPLOYEES," (Dep.Ex. 2), attaching the ESP. (Feeney Dep. I at 137:8–25 and 138:1–15.) Feeney did not distribute the memorandum and attached ESP to Amax R & D personnel. In August 1993, Richard Tiamanini, at that time Director of Compensation & Benefits for Amax at its New York offices, with Feeney's input, prepared an initial list of employees whom he believed were covered under the ESP. (Tiamanini Aff. ¶¶ 2–4; Dep. Ex. 34.) None of the Amax R & D employees were included on that list.

On October 7, 1993, Marilyn ("Sue") Germann, Amax R & D Director of Human Resources, sent a memorandum to Wesley C. Davidson, Amax Director of Business Development & Research, stating, *inter alia,* "[t]he purpose of this memorandum is to express my concern that the employees at Amax Research and Development Center may be excluded from the group that will be receiving the 'Enhanced Severance Package' and to appeal to you for your support in this matter." (Germann Dep. at 40:20–25; 41:1; Dep. Ex. 4. at (unnumbered) 1). Germann referred to herself in the body of the letter as "the Human Resources representative for the lab employees." (Dep. Ex. 4 at (unnumbered) 2.)

On October 15, 1993, Germann sent a letter to Feeney stating:

The purpose of this memorandum is to express my concern that the employees at Amax Research and Development Center have been excluded from the group that will be receiving the "Enhanced Severance Package" and to appeal to you for your assistance in this matter.

A copy of the Corporate Separation Policy for Corporate Employees, along with your memorandum of June 17, 1993, has been circulated among the employees here at the lab. In addition, it is common knowledge that both Amax Resource Conservation Company and Amax Exploration Inc. have been included in the group of "Corporate Employees" to receive the enhanced package. While the fate of the lab has not yet been announced, the employees are already upset that the enhanced package has not been approved for this group. They believe that Amax R & D Center is the only Amax Division that is managed by minorities and that Amax Inc is discriminating against the lab by excluding them from the group to receive the enhanced package. The employees at the lab are intelligent human beings who will respond to an explanation if one is available. Similarly, they will respond to a lack of explanation if one is not available.

I am still an Amax employee and, as the Human Resources Manager, will respond to the employees per your direction. I appreciate your time and look forward to hearing from you regarding how (or whether) you want me to respond to this sensitive issue.

(Germann Dep. at 53:2–5; Dep. Ex. 5.)

After receipt of this letter from Germann, Feeney conferred with Khumar Bhasin, President of Amax R & D at a meeting in New York, and informed him that "the R & D employees were not participants under this corporate separation policy and that it was never assumed that they would be... "(Feeney Dep.I at 173:2–23.) Feeney states she asked Bhasin, as Germann's supervisor, to inform her of this fact and he said he would do so. Bhasin denies Feeney asked him to relay any message to Germann and recalls only that Feeney told him she was angry with Germann's letter, that it would cost millions, that she would have to go to the Chairman of Cyprus Mineral Company for the decision, and that the employees of Amax R & D could have the bonus portion of the ESP. (Bhasin Dep. at 76:21–78:24; 99:23–100:14; 137:7–138:8.) According to Bhasin, he thinks when he returned from New York to Amax R & D he talked with Sue Germann about his conversation with Feeney and that he probably discussed it in a staff meeting. (*Id.* at 79:13–81:3; 137:7–138:8.)

Following her October 15, 1993 letter, Germann made no additional attempts to contact Feeney with respect to benefits because Bhasin told Germann that Feeney was going to contact her. (Germann Dep. at 56:17–25—56:1–25.) On January 27, 1995, counsel for Plaintiffs sent a letter to counsel for Cyprus Amax, stating, *inter alia*:

> Enclosed are three copies of our "Summary Report of Claim," in which we give you as much of the information currently available to us as possible regarding this matter, to assist you and your clients in analyzing and assessing this claim, and engaging in meaningful settlement negotiations. It is submitted for the purpose of settlement discussions only.
>
> . . . .
>
> Please let me know if you have any questions, or if you need explanations on, say the Spreadsheets or other parts of this Report.

(Dep.Ex. 100.) [5]

In response, on January 27, 1995, counsel for Cyprus Amax sent a letter to Plain-

---

**5.** Plaintiffs assert this document, introduced by Defendants is an inadmissible settlement

tiffs' counsel, stating *inter alia,* "the Plan Administrator has directed me to advise you as legal representative of your clients that your request in behalf of your clients for additional severance benefits is denied." (Dep.Ex. 13.) The letter goes on to explain the basis for the denial is that the Amax R & D employees do not fall within the definition of "Corporate Employees" in the ESP. It further states in a section entitled "Information as to Steps to be Taken to Submit the Claim for Review," "the applicable ERISA appeals procedure to appeal the Plan Administrator's denial of the claim of your clients would be to utilize Cyprus Amax's ERISA appeals procedures. Should some or all of your clients wish to appeal the denial, the appeal should be mailed to . . . ." and that appeal documents should be sent within sixty days of the receipt of the letter.[6] (*Id.*) None of the Plaintiffs pursued an appeal under the appeals procedures described in counsel's March 8, 1995 letter to their attorneys. Rather, in January 1996, they filed this lawsuit.

### III. *Standards for Motion for Summary Judgment*

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, it is necessary to construe the factual record and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1510 (10th Cir.1996).

" 'The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to judgment . . . .' " *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993)(quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987)). "Rule 56, however, imposes no requirement on the moving party to 'support its

motion with affidavits or other similar material *negating* the opponents' claim." *John Hancock Mutual Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"Once the moving party shows it is entitled to summary judgment, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.' " *Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993)(quoting *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990)), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1075, 127 L.Ed.2d 392(1994). "[T]he nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying on the types of evidentiary materials contemplated by Rule 56." *John Hancock,* 27 F.3d at 503.

"To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence. To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993)(quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

---

**6.** Plaintiffs assert this document too is an inadmissible settlement negotiations docu- ment. *See* Fed.R.Ev. 408.

## IV. *Merits*

### A. *Interpretation of "personnel of the Company at the Company's corporate headquarters" in the ESP.*

■ To determine whether there is a genuine issue of material fact when interpreting an ERISA plan, it is necessary to give the plan its plain meaning. *Healthcare America Plans, Inc. v. Bossemeyer,* 953 F.Supp. 1176, 1189 (D.Kan.1996). An ERISA plan must be interpreted like any other contract, by examining its language and determining the intent of the parties to the contract. *Capital Cities/ABC, Inc. v. Ratcliff,* 141 F.3d 1405, 1411 (10th Cir. 1998). "If we determine the plan language is ambiguous, we may look at extrinsic evidence. We note, however, that if the extrinsic evidence to which we resort is conflicting, summary judgment is inappropriate." *Id.*

Thus, to establish whether there is a genuine issue of material fact regarding Plaintiffs' status as corporate headquarters employees, it is necessary to examine the ESP to determine if the contract language is ambiguous and, if so, to resort to extrinsic evidence for the purpose of interpreting the intention of the parties. Plain meaning must be applied to the contract language to find any ambiguities. *Id.* Here, the ESP specifically covers "personnel of the Company at the Company's corporate headquarters." (Dep. Ex. 1 at 5.)

■ Defendants argue there is no genuine dispute of fact that Plaintiffs are not corporate headquarters employees and therefore not entitled to coverage under the ESP. For their definition of the term, Defendants rely on Feeney's testimony to the effect that a subsidiary must pass either a geographical or functional test to be eligible for inclusion as corporate headquarters and thus, for its employees to be covered under the ESP. (Feeney Dep. I at 132:2–12). They maintain the plain language of the ESP unambiguously excludes Plaintiffs who do not qualify as corporate headquarters employees under either the geographical test (because Amax R & D is not in the immediate proximity of Cyprus Amax's New York corporate headquarters) or the functional test (because, rather than providing the company with administrative services, they serve a technical purpose). Because there are no ambiguities in the ESP, Defendants argue, there is no genuine issue of material fact that Plaintiffs are excluded from it.

Plaintiffs argue, to the contrary, that the ESP is inherently ambiguous because it lacks a definition of who is a corporate headquarters employee. This is compounded, they assert, by multiple definitions in any standard dictionary of the word "headquarters,"[7] Defendants' use of both a geographic and a functional test, and the absence of a definitive list of who is included in the ESP.

■ "[W]ords cannot be written into the agreement imparting an intent wholly unexpressed when it was executed." *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1202 (10th Cir.1992). The test is to give the plan's language the common and ordinary meaning that a reasonable person in the position of the plan participant, but not the actual participant, would have attributed to the words. *Chiles,* 95 F.3d at 1511. Here, the Defendants' definition of corporate headquarters employees involves the application of a dual geographic and functional test. It cannot be said that a reasonable person in the position of the plan participant would look at the plain language of "personnel of the company at the company's corporate headquarters" and interpret this as requiring such test. For this and the other reasons proffered by Plaintiffs, I find

---

7. For example, Webster's Third New International Dictionary (1976) defines "headquarters" as "1 a: a place from which a military commander issues orders and performs the functions of command b: the personnel associated with and assisting the commander in performing his function 2: a chief or usual place of business: the administrative center of an enterprise or activity . . . ."

there is an ambiguity in the plan language of the ESP and I may look at extrinsic evidence. *See Capital Cities/ABC, Inc.,* 141 F.3d at 1411. If such extrinsic evidence is conflicting, summary judgment is inappropriate. *Id.*

Defendants argue Amax R & D was included in the corporate group for many purposes, including the company directory, classification in the annual report, health insurance pricing, and payroll distribution. Other subsidiaries, including Band–Gap Technology Corporation and Amax Oil & Gas, were also included in the group for many purposes but, like Amax R & D, were excluded from the ESP. Further, according to Defendants, the inclusion of other non-corporate headquarters employees in the ESP does not entitle Plaintiffs to receive benefits under the ESP because their inclusion can be interpreted either as constituting an exception to the plan or a recognition of the difference between these subsidiaries and Amax R & D. Unlike the included entities, Defendants assert, Amax R & D was separately incorporated, did business with non-Amax entities and billed Amax entities for services provided to them.

Plaintiffs respond the inclusion of the other similarly situated subsidiaries entitles them to coverage under the ESP. Moreover, it invalidates the argument that Amax R & D does not qualify under the dual tests developed by Defendants, because some of those included are neither located in the direct proximity of New York headquarters nor engage in administrative services. This is but one example of the conflicting extrinsic evidence to which the parties resort for interpreting the intention of the ESP.

Defendants also assert Amax R & D had no reason to believe that its employees were covered by the ESP because the plan was not officially distributed to them, no individuals with benefits administration authority made representations that they were covered by the ESP, and they received a severance bonus calculated from a separate bonus plan. Plaintiffs argue, citing the deposition testimony of Bhasin and the affidavit of Germann, that by paying Amax R & D employees the bonus specified in the ESP, Cyprus Amax awarded a portion of ESP benefits to Amax R & D. This, they say, reflects the intention of Cyprus Amax to include Amax R & D employees as corporate headquarters employees covered by the ESP. Defendants, however, maintain Amax R & D's bonuses were paid under a separate bonus plan similar to the ESP. In this regard they rely on a different portion of Bhasin's testimony, describing how Amax R & D's annual bonuses are calculated, and Feeney's testimony, describing the presence of another bonus plan and stating that the employees covered by the ESP may receive a duplication of payments under this other plan when combined with the ESP. I find there is conflicting extrinsic evidence in this regard and a genuine issue of material fact remains regarding whether the Plaintiffs are corporate headquarters employees covered by the ESP. Summary judgment on this ground is therefore inappropriate.

B. *Whether any claims procedure violations have occurred which would entitle Plaintiffs to receive benefits under the ESP.*

■ Plaintiffs seek benefits under the ESP based on a violation of the claims procedure rights under 29 U.S.C. § 1133 and the ESP and based on the failure of the ESP to prescribe any claims procedure. Defendants argue no claims procedure violations have occurred and Plaintiffs' Counts III and V must be dismissed. Even assuming there was some violation of ERISA's claims procedure requirements, Defendants assert, this would not entitle Plaintiffs to any benefits, only a declaration that procedures for claims had not been properly established, *i.e.,* that violation of § 1133 does not give rise to substantive remedies.

ERISA mandates a reasonable claims procedure, 29 U.S.C. § 1133.[8] Further, the Code of Federal Regulations establishes what will be considered reasonable:

(1) A claims procedure will be deemed to be reasonable only if it:

(i) Complies with the provisions of . . . this section . . . .

(ii) Is described in the summary plan description . . . ,

(iii) Does not contain any provision, and is not administered in a way, which unduly inhibits or hampers the initiation and processing of plan claims, and

(iv) Provides for informing participants in writing, in a timely fashion, of the time limits . . . .

29 C.F.R. § 2560.503–1(b)(1). Here, Plaintiffs assert there was no summary plan description, no claims procedure, and no provision to inform participants in writing of anything. Citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984), they argue courts have held that the claims procedure fails "simply because there was none." In *Blau*, the court stated:

> While it is thus clear that violations of ERISA's procedural requirements—reporting, disclosure and claims procedures—may amount to arbitrary and capricious conduct, the remedy to which this entitles the victimized employees has often been less than satisfactory. Ordinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy. *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir.1983). We do not deny the logic of this proposition in the ordinary case. ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans.

> Under ERISA, however, no great wall divides procedural from substantive violations. Although reporting and disclosure requirements are arguably procedural, it is these procedural requirements that alter the very balance of knowledge and rights between covered employees and their employer.

*Id.*

In her deposition, Feeney stated that the ESP did not provide a claims procedure and that as Administrator of the plan she did not know how she would determine whether a claim had been made for benefits. (Feeney Dep. I at 15:1–21.) This, at minimum, creates a material dispute of fact on the issue of whether any claims procedure existed. The absence of any claims procedure, as stated in *Blau*, may rise to the level of working substantive harm entitling Plaintiffs to benefits.

■ Next, Defendants argue Germann's October 15, 1993 letter was not a claim for benefits or request for information and therefore cannot be a basis for any of Plaintiffs' claims. With regard to whether any communication from or on behalf of Plaintiffs amounted to a request for information under § 1132(c), the relevant federal regulations pertinently provide:

> If a reasonable procedure for filing claims has not been established by the plan, a claim shall be deemed filed when a written or oral communication is made by the claimant or the claimant's authorized representative which is reasonably calculated to bring the claim to the at-

---

8. In accordance with regulations of the Secretary, every employee benefit plan shall - (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named beneficiary of the decision denying the claim. 29 U.S.C. § 1133.

tention of ... the organizational unit which has customarily handled employee benefit matters of the employer ....

29 C.F.R. § 2560.503–1(d) (1995). The regulation further provides a plan administrator shall provide to every claimant who is denied a claim for benefits written notice setting forth, *inter alia*, the specific reasons for the denial. *Id.* § 2560.503–1(f). Also relevant is 29 U.S.C. § 1132(c), which states:

> Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

Germann's October 15, 1993 letter states she is writing to express "my concern" that employees at Amax Research and Development Center "have been excluded from the group that will be receiving the 'Enhanced Severance Package' and to appeal to you for your assistance in this matter." (Dep.Ex. 5.) Germann states to Feeney, "as the Human Resources Manager," she will "respond to the employees per your direction" and "look[s] forward to hearing from you regarding how (or whether) you want me to respond to this sensitive issue." *Id.* In her affidavit, Germann states, when she sent this letter, she was acting on behalf of all Amax R & D employees because that was her job and because she had been specifically instructed to do so on everyone's behalf by her supervisor, Mr. Khumar Bhasin, President of Amax R & D. (Germann Aff. ¶¶ 7–10.)

In denying Feeney's motion to dismiss, I distinguished this case from *Pane v. RCA Corp.*, 868 F.2d 631, 639 (3d Cir.1989), cited by Feeney. *See Adams v. Cyprus Amax Mineral Co.*, 927 F.Supp. 1407, 1410 (D.Colo.1996). In *Pane*, the court held "nothing in the record established that Pane had requested any information about the plan to which he was entitled and which was not provided to him." *Pane*, 868 F.2d at 639. Material disputes of fact exist as to whether the Germann letter constituted a request for benefits on behalf of all Amax R & D employees. Further disputes exist as to whether oral and written communications by other employees constituted such requests, warranting a response under § 1132(c). In addition, disputes of fact exist as to whether the manner in which Cyprus Amax responded or did not respond to these communications amounted to procedural violations of the ESP or ERISA.

Defendants next argue the ESP did provide for a claims procedure and any inadequate claims procedure contained in the ESP itself was remedied by the letter sent to Plaintiffs' counsel in March 1995 denying their claim and setting forth the opportunity to appeal. Defendants rely on Section 11 of the ESP which provides:

> The administrator shall provide adequate written notice to any employee whose claim for benefits hereunder has been denied, setting forth specific reasons for such denial, written in a manner calculated to be understood by such Employee, and afford such Employee a full and fair review of the decision denying the claim, in accordance with the applicable requirements (if any) of the Employee Retirement Income Security Act of 1974, as amended.

(Depo. Ex. 1 at 13.)

They maintain that in January 1995 Plaintiffs (in fact Plaintiffs' counsel) sent a "Summary of Claim" to Cyprus Amax, (Depo.Ex. 100), and that the claim was denied by a letter which set forth the opportunity for Plaintiffs to appeal, (Depo.Ex. 13). According to Defendants, any inadequate claims procedure contained in the plan itself was remedied by the March 8, 1995 letter which set forth the

opportunity to appeal. Moreover, they assert, by failing to follow the appeals procedures, Plaintiffs did not exhaust their administrative remedies and are not entitled to sue for benefits under the ESP.

█ Both ERISA and the Code of Federal Regulations provide the plan itself is to provide a procedure by which a claimant has a reasonable opportunity to appeal. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1(d). As stated, a genuine issue of material fact exists as to whether the ESP provided any claims procedure which satisfied the regulatory requirements. Further, such genuine issue exists as to whether a letter from a lawyer, (Depo.Ex. 13), in response to another lawyer's letter attaching a " 'Summary Report of Claim' ... to assist you and your clients in analyzing and assessing this claim and engaging in meaningful settlement negotiations," (Dep.Ex. 100) sent two years after the alleged requests for benefits, satisfies these requirements.

█ Notably, ERISA contains no explicit exhaustion requirement, although the Tenth Circuit has observed that exhaustion of administrative remedies is an implicit prerequisite to seeking judicial relief. *See Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir.1990). Nevertheless, because ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion. *See McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir.1998). District courts have not required exhaustion when resorting to administrative remedies would be futile or when the remedy provided is inadequate. *Id.* Where, as here, genuine issues exist as to whether the ESP provided any procedure by which a claimant had a reasonable opportunity to appeal, summary judgment on the basis of failure to exhaust administrative remedies is not warranted. *See Baker v. Universal Die Casting, Inc.*, 725 F.Supp. 416, 419 (W.D.Ark.1989) (finding plaintiffs were not required to exhaust administrative remedies where they did not having meaningful access to plan procedures and where exhaustion would be futile).

### C. *Breach of Fiduciary Duty.*

Cyprus Amax seeks summary judgment on Plaintiffs' claim for breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1106, arguing it did not owe any fiduciary duty to Plaintiffs because such duty is owned only to "participants and beneficiaries" of a plan, *see* 29 U.S.C. § 1104, *i.e.*, to any employee or former employee entitled to benefit thereunder, *see* 29 U.S.C. § 1002(7). Because only "corporate employees" are eligible to participate under the ESP, Defendants argue, Plaintiffs are neither participants nor beneficiaries and thus no fiduciary duty was owed to them. Because genuine issues of material fact exist as to whether Plaintiffs are "corporate employees," this argument fails.

Defendants also argue it is unclear whether, as Plaintiffs claim, the denial of severance pay can give rise to an action for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) & (3). In this regard, they cite *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 n. 1 (2d Cir.1992) and *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that recovery for breach of fiduciary duty inures to the plan, not to the individual claimant). Thus, Defendants maintain, no such claim for breach of fiduciary duty should be allowed.

Dicta in *Russell,* may be read as suggesting that the fiduciary duties imposed by ERISA on plan administrators run only to the plan itself, as opposed to individual beneficiaries. There, the Court held a plaintiff may not be awarded extra contractual damages based on a delay in the processing of a claim. 473 U.S. at 148, 105 S.Ct. 3085. I do not take this limited holding to mean that an ERISA plan owes no duty to its beneficiaries. To the con-

trary, as noted in *Russell,* "[t]here can be no disagreement with the ... conclusion that ... a beneficiary [may] bring an action against a fiduciary who has violated [a fiduciary duty imposed under ERISA]." *Id.* at 140, 105 S.Ct. 3085.

In *Macklin v. Retirement Plan for Employees of Kansas Gas & Electric Co.,* 99 F.3d 1150 (Table) 1996 WL 579940 at * 5 (10th Cir. Oct.9, 1996), the Tenth Circuit rejected the argument that, because under *Russell* a beneficiary is not entitled to substantive remedies, that beneficiary cannot recover on his breach of fiduciary duties claim, despite a defendant's failure to comply with ERISA's requirements. *Macklin* held that, while it was true that the plaintiff could not receive damages for the company plan's failure to comply with ERISA's disclosure requirements, he was not foreclosed from seeking various forms of equitable relief under ERISA § 409, including the removal of fiduciaries. Similarly, here, although this relief may ultimately be inappropriate, a material dispute exists on the breach of fiduciary claim that must be determined by the trier of fact.

### D. *Plaintiffs' Sixth Claim for Relief.*

Defendants argue Plaintiffs' sixth claim for recovery of penalties due from Plan Administrator Helen M. Feeney under 29 U.S.C. § 1132(a)(1)(A) and 1132(c) is barred by the Colorado statute of limitations and, in any event, fails to state a claim. Section 1132(c)(b) addresses Ms. Feeney's refusal to supply requested information to a participant or beneficiary and the administrator's personal liability to such person. It does not contain a statute of limitations provision.

██ In these circumstances, the court applies the most analogous state statute of limitations. *See Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197 (10th Cir.1990). Following, *Held,* I must (1) decide which state supplies the statute of limitations; (2) characterize the sixth claim for relief; and (3) decide which state

statute should apply as the most analogous. Relying on *Held,* Defendants argue that Colorado law, rather than that of New York, provides the applicable statute of limitations and Colorado Revised Statutes § 13–80–103 providing for a one year statute applies. That statute reads in pertinent part: "The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues ... (d) All actions for any penalty or forfeiture of any penal statutes." Colo.Rev.Stat. § 13–80–103(1)(d) (1998).

Defendants cite *Damon v. Unisys Corp.,* 841 F.Supp. 1094, 1097 (D.Colo.1994) (Babcock, J.) in which plaintiff sought imposition of penalties under 29 U.S.C. § 1132(c). There, the court concluded the state law claim most analogous was one for civil penalties pursuant to a penal statute and that the one year statute under Colorado Revised Statutes § 13–80–103(1)(d) applied. Alternatively, Defendants argue, even if I find the penalties under § 1132(c) are not penal for the purposes of the statute of limitations, I should apply Colorado Revised Statutes § 13–80–1–102(1)(g) which provides: "The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues ... (g) all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute." Colo.Rev.Stat. § 13–80–103(1)(g) (1998). As a final alternative, and with the same result, Defendants assert § 13–80–102(1)(i) should apply. It provides a two year statute of limitations will be applied to "all other actions of every kind for which no other period of limitation is provided." Colo.Rev.Stat. § 13–80–102(1)(i). Applying the two year statute, Defendants maintain the sixth cause of action is also time barred. Defendants also argue penalties cannot be assessed against Helen Feeney

because she was not the plan administrator at the time the penalty period began.

Plaintiffs argue, under applicable federal law and policies, New York law applies and the most analogous statute of limitations is its six year limitation period for a breach of contract action. Under this statute, the sixth claim is timely. They rely on *Held*, where the Tenth Circuit found New York law, rather than Colorado law, should apply because New York had the more significant relationship to the claim at hand because the employer at all times maintained its headquarters and principal place of business in New York, the decision not to continue Held's employment was made there, and his personnel records were kept there. Colorado, on the other hand, had no interest in the matter other than that of forum to the litigation and the tenuous concern as Held's alleged domicile. *Held*, 912 F.2d at 1203.

■ Plaintiffs urge the same logic applies here in that the administrative center and main offices of both Amax and the Administrator of the ESP were located in New York and the ESP was administered and its records maintained in New York. I disagree. Here, unlike in *Held*, Plaintiffs are not only domiciled in Colorado, but their employment was in Colorado, as was their receipt of communications from Defendants in New York. Following *Held*, I apply Colorado's statute of limitations.

■ With respect to what Colorado statute is the most analogous, Plaintiffs urge that *Damon* is distinguishable in that there plaintiff sought damages only pursuant to § 1132(c) for the alleged refusal to provide § 1024(b)(4)[9] information and for attorney fees and costs under § 1132(g).

Here, Plaintiffs state, the information sought was required to be provided under 29 U.S.C. § 1133, generally a written notice of any denial of a claim, the reasons therefor and an explanation of the available appeals procedure. Further, in *Damon*, a state trial court had already found that denial of plan benefits was arbitrary and capricious, ordered their reinstatement, and awarded Damon his fees and costs, but dismissed his penalties claim under § 1132(c) as outside the court's jurisdiction. Here, Plaintiffs § 1132(c) claim for penalties is brought in conjunction with a claim for ESP benefits under § 1132(a)(1)(B).

Plaintiffs ask that I rely on *Abbott v. Drs. Ridgik, Steinberg & Associates, P.A.*, 609 F.Supp. 1216, 1220 (D.N.J.1985) where the court reasoned that the penalty provision had a compensatory aspect and applied the statute of limitations governing a contract claim. In reaching this conclusion, the *Abbott* court observed that a successful § 1132 claimant is required to demonstrate prejudice resulting from an administrator's failure to provide requested information in a timely fashion *Id.* at 1219. The *Damon* court, however, noted that in the Tenth Circuit, a claimant is not required to demonstrate prejudice, *see* *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 894 n. 4 (10th Cir. 1988). Accordingly, that court "fail[ed] to see the clear analogy between a contract claim and a request for penalties pursuant to § 1132(c)." *Damon*, 841 F.Supp. at 1097. Because prejudice was just one factor to be considered by the court in determining the amount of the § 1132(c) violation, the penalty remained penal. *Id.*

9. Section 1024(b)provides in pertinent part:
Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
. . . .
(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

**1140**

Thus, the *Damon* court found the most analogous Colorado statute is the one year statute applicable to an action for civil penalties contained in Colorado Revised Statute § 13–80–103(1)(d) (1998).[10]

Being in the jurisdiction of Colorado, I am persuaded by the reasoning in *Damon* and other decisions which have cited it with approval. In *Harless v. Research Institute of America*, 1 F.Supp.2d 235, 240 (S.D.N.Y.1998), noted the reasoning in *Damon* echoed that in *Groves v. Modified Retirement Plan. Etc.*, 803 F.2d 109 (3d Cir.1986):

> [T]he threat of personal liability was imposed primarily because of the effect it would have on a plan administrator-inducing him to comply with the statute- and only secondarily, if at all, out of a desire to make participants whole for the "damages" they incurred as a result of the plan administrator's failure to fulfill the obligations ERISA imposes upon him.

*Id.* at 117.

Plaintiffs urge that, applying the one year statute under which the sixth claim is time barred, would entail permitting their claim for benefits under § 1132(a)(1)(B) (governed by Colorado's three year statute of limitations period for breach of contract actions) while barring the § 1132(c) claim. As reflected in *Damon*, however, the claim for benefits is distinct from that for penalties against the administrator. Notably, in *Leonelli v. Pennwalt Corp.*, 1988 WL 108594 (N.D.N.Y. Oct.17, 1988), aff'd. in relevant part, rev'd in part 887 F.2d 1195 (2d Cir.1989), the district court denied a plaintiff leave to amend his complaint to add a § 1132(c) claim on the ground that such a claim would be time-barred. *Leonelli* reasoned "that § 1132(c) liability is a creature of statute as opposed to liability based on contract or tort. . . ." *Leonelli*, 1988 WL 108594 at *5. The Second Circuit affirmed this rejection of a contractual theory of liability under § 1132(c).[11]

Accordingly, I find the most analogous state law claim to a § 1132(c) ERISA claim is one for civil penalties pursuant to a penal statute and the one year statute under Colorado Revised Statutes § 13–80–103(1)(d) applies. In *Damon*, the court held that for the purposes of § 1132(c), the statute of limitations commenced 30 days after the request for information letter was sent. *Damon*, 841 F.Supp. at 1098. Ms. Germann's letter to Ms. Feeney dated Friday October 15, 1993, was sent for delivery the following Monday. Accepting Plaintiffs' construction for the purposes of determining the timeliness of the sixth claim, under § 1132(c), Feeney was required to furnish the information by November 18, 1993, the date on which the statute of limitations commenced. This lawsuit was filed on January 26, 1996, more than two years later. Nor have Plaintiffs set forth specific facts showing that there is a genuine issue for trial that the § 1132(c) claim is not barred by the one year statute insofar as it is based on requests for information by persons other than Ms. Germann. Applying the one year statute of limitations, the sixth claim for relief under § 1132(c) is barred and I grant summary judgment on this claim.[12]

10. In *Abbott*, like in *Damon*, the plaintiff's entitlement to plan benefits was not in dispute and the sole issue was his entitlement to per diem damages under § 1132(c). Thus, Plaintiffs' attempt to distinguish *Damon* on these grounds, while relying on *Abbott*, does not further their argument.

11. In ruling on Defendants' motion to dismiss, I cited *Stone v. Travelers Corp.*, 58 F.3d 434 (9th Cir.1995) for the proposition that a claim under § 1132(c) was not penal, reasoning that penalties under § 1132(c) are "an

action created by statute other than a penalty or forfeiture." Although the question is close, for the purposes of the statute of limitations, under Colorado law, as stated in *Damon* and *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214 (Colo.1984), I regard the penalties under § 1132(c) as penal.

12. Because I find the sixth claim for relief is barred as untimely under the one year statute, I do not address whether the alternative Colorado statutes might apply nor reach the argument that penalties cannot be assessed

## V. *Conclusion.*

For the aforesaid reasons, I grant Defendants' motion insofar as it seeks summary judgment on the sixth cause of action against Defendant Feeney. I deny the motion in all other respects. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED insofar as it seeks judgment on the sixth cause of action against Administrator Helen M. Feeney and that the case against her is dismissed with the parties to bear their own costs;

IT IS FURTHER ORDERED THAT Defendants' Motion for Summary Judgment is DENIED in all other respects;

IT IS FURTHER ORDERED THAT, on or before April 26, 1999, the parties shall submit a Pretrial Order;

IT IS FURTHER ORDERED THAT the parties shall comply with the Memorandum on Pretrial and Trial Procedures, Part II (Instructions for Preparation and Submission of Pretrial Order) and, on or before April 26, 1999, the parties shall submit to court the jury instructions packet (as described in Part II), both in print and on a 3.5″ computer disk compatible with WordPerfect 6.1;

IT IS FURTHER ORDERED THAT a Pretrial Conference will be held on **Thursday, May 6, 1999 at 9:30 a.m. in Courtroom C–401;**

IT IS FURTHER ORDERED THAT the parties shall confer, and, at the time of the Pretrial Conference, provide the court with their respective lists of exhibits, reflecting those which are to be admitted by stipulation and those to which the other side objects.

against Feeney as she was not the plan ad- ministrator when the penalty period began.